**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES KEATING and POLICE BENEVOLENT LABOR COMMITTEE UNIT #42, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 22 CV 5488 |
| CITY OF WAUKEGAN, an Illinois municipal corporation, | ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Keating is a former employee of the City of Waukegan. He was a police officer with the Waukegan Police Department until he was terminated in March 2022 based on three incidents of alleged misconduct, which were each the subject of an internal investigation. Plaintiff Police Benevolent Labor Committee, Unit #42 (the "Labor Committee") is a labor organization and the exclusive collective bargaining representative of all sworn police officers with the Waukegan Police Department. The Labor Committee and the City of Waukegan, the defendant in this case, are parties to a collective bargaining agreement (the "CBA").

After Mr. Keating's March 2022 termination, the Labor Committee filed a grievance against the City seeking to reverse the termination for lack of just cause, following the grievance procedure provided for in the CBA. The City and the Labor Committee were unable to reach a settlement, and the Labor Committee referred the grievance to final and binding arbitration. While the grievance was pending arbitration, the City initiated an internal investigation into another alleged incident of misconduct by Mr. Keating, and the City informed Mr. Keating in July 2022

that it had found a separate and independent basis for terminating his employment. The Labor Committee again filed a grievance challenging the termination per the CBA procedure.

In September 2022, Mr. Keating and the Labor Committee filed the action before this Court, asserting that the City deprived Mr. Keating of *Garrity* protection and due process in connection with the second termination and lacked authority to terminate him the second time. This action comes before the Court on the City's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 10. The Court concludes that the complaint fails to state a plausible claim to relief and, accordingly, grants the City's motion.

## BACKGROUND[1]

Around March 17, 2022, Interim Chief of Police Keith Zupec ("Chief Zupec") sent Mr. Keating a letter with the subject, "Termination of Employment." Compl. ¶ 14, Notice Removal Ex. B, ECF No. 1; Compl. Ex. B, at 1. In the letter, Chief Zupec stated that he was terminating Mr. Keating's employment with the Waukegan Police Department for conduct that violated Department rules and/or regulations. Compl. Ex. B, at 1. That conduct was the subject of three internal investigations (21INV-020, 21INV-025, and 22INV-005). Compl. ¶ 28. On March 21, 2022, the Labor Committee filed a grievance against the City on Mr. Keating's behalf alleging that his termination violated the CBA. Compl. ¶ 16. In the grievance, the Labor Committee sought "[r]einstatement and make whole relief for Officer Keating." Compl. Ex. C, at 1.

---

[1] Background facts are drawn from the complaint, exhibits attached to the complaint, and elaborations by the plaintiffs in opposing the City's Rule 12(b)(6) motion. Exhibits attached to a complaint are considered part of the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In opposing a Rule 12(b)(6) motion, plaintiffs "may elaborate on [their] factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (collecting cases). Here, the plaintiffs' elaborations concern arbitration proceedings that occurred (or are scheduled to occur) after the complaint was filed.

The CBA defines a grievance as "a dispute or difference of opinion raised by an employee covered by this Agreement against the City or by the Labor Committee against the City involving the meaning, interpretation or application of the express provisions of this Agreement." CBA Art. VII § 7.1, Compl. Ex A. "A grievance [by the Labor Committee] shall be processed in" four basic steps, with the grievance proceeding to the next step if the dispute is not settled and the Labor Committee wishes to appeal: (1) the Labor Committee shall submit the grievance, designated as a grievance, to the employee's immediate supervisor, who shall give the Labor Committee an oral or written answer; (2) the grievance shall be referred in writing to the employee's shift commander, and the shift commander or other designated person shall discuss the grievance with the Labor Committee and, if no settlement is reached, shall provide the Labor Committee a written answer; (3) the grievance shall be referred in writing to the Chief of Police or other designated person, who shall discuss the grievance with the Labor Committee and, if no settlement is reached, shall give the City's written answer to the Labor Committee; and (4) the grievance shall be referred in writing to the Mayor or his designee, who shall discuss the grievance with the Labor Committee and, if no settlement is reached, shall give the City's written decision to the Labor Committee. *Id*.

If the grievance concerns a three-plus-day suspension, removal, or discharge of an officer, "the Labor Committee may refer the grievance to final and binding arbitration"—a fifth step. *Id*. §§ 7.1, 7.5(1). At this fifth step, "[t]he arbitrator shall consider and decide only the question of fact as to whether there has been a violation, misinterpretation, or misapplication of the specific provisions of [the CBA]," and the "findings of the arbitrator shall be final and binding upon the City and the Labor Committee." *Id*. § 7.5(8).

The Labor Committee grieved Mr. Keating's March 17, 2022, termination to the fifth step. At the time that the plaintiffs commenced this action, an arbitration was set to be heard in October

3

2022. Compl. ¶ 17. In their surresponse brief opposing the City's motion to dismiss, the plaintiffs updated the Court on the outcome of the arbitration and attached the arbitrator's opinion and awards. Pls.' Surresp. to Def.'s Reply ("Pls.' Surresp. Br."), ECF No. 26. On April 20, 2023, Arbitrator George T. Roumell, Jr., issued an award reducing Mr. Keating's March 2022 termination to a ten-month suspension. *Id*. at 1. By the time Arbitrator Roumell issued his opinion and awards, Mr. Keating had already served more than the ten-month suspension. Arbitrator Roumell awarded Mr. Keating make-whole relief for time and benefits lost beyond the suspension, less income earned from other employment during that time. Pls.' Surresp. Br. Ex. A, at 28.

So far, this scenario is a straightforward example of the CBA's grievance procedure in action, but there is a complication. After Mr. Keating's termination in March 2022 but before Arbitrator Roumell reduced that termination to a suspension in April 2023, the City initiated another internal investigation into Mr. Keating's conduct (22INT-014, or "#14") and, upon the completion of that investigation, Chief Zupec (no longer Interim Chief) sent a letter to Mr. Keating informing him that, "I find there to be a separate and independent basis for terminating your employment for engaging in . . . misconduct." Compl. Ex. H, at 2. Internal Investigation #14 and the subsequent disciplinary action (the "second termination") are the subjects of this case.

Around May 18, 2022, Commander Michael Mandro and Deputy Chief Florip served a notice of formal investigation regarding Internal Investigation #14 upon Mr. Keating at his home. Compl. ¶ 18-19. The notice informed Mr. Keating that the City would be holding a hearing on June 2, 2022, "to question [Mr. Keating] regarding . . . [his] actions during an incident on October 20, 2020 and October 21, 2020, which ultimately led to an officer-involved shooting involving another officer." The notice further advised that the purpose of the hearing was "to gather information of misconduct, which may be the basis for filing charges seeking a suspension in

excess of three (3) days, removal, or discharge." Compl. Ex. D, at 1. The notice specified that the following issues would be the subjects of the investigation: whether Mr. Keating (1) "followed training and/or had probable cause to order an arrest;" (2) "exhibited conduct that was unbecoming of an officer;" (3) "communicated false or inappropriate statements over the dispatch;" (4) "followed the [Waukegan Police] Department's pursuit policy;" (5) "made false or purposefully misleading statements in a supplemental police report issued following the incident; and/or" (6) "otherwise exhibited behavior inconsistent with the U.S. Constitution, State or federal law, or Departmental policies." *Id*.

The three internal investigations that preceded Mr. Keating's March 2022 termination concerned unrelated incidents of alleged misconduct, which had all occurred a year or more ***after*** the October 2020 officer-involved shooting. Compl. Ex. B, at 1. That is, Internal Investigation #14 concerned alleged misconduct committed not only prior to the first termination, but also prior to the conduct upon which the first termination was based. To summarize the timeline: in October 2020, Mr. Keating committed alleged misconduct in connection with an officer-involved shooting. Between October and December 2021, he committed alleged misconduct on three other occasions. Around March 17, 2022, the City terminated Mr. Keating based on its investigations into the three incidents of alleged misconduct in 2021. On March 21, 2022, the Labor Committee filed a grievance challenging the termination. Then, around May 18, 2022, the City launched an investigation into Mr. Keating's conduct related to the October 2020 officer-involved shooting.

In its notice of formal investigation, the City acknowledged that "it [had] terminated [Mr. Keating's] employment on March 17, 2022[,] for unrelated conduct." Compl. Ex. D, at 1. The City explained to Mr. Keating that it was nonetheless initiating Internal Investigation #14 because the Labor Committee was seeking Mr. Keating's reinstatement: "[Y]our bargaining representative has

taken steps through the arbitration process to attempt to reverse your termination. As such, the City is initiating this formal investigation on whether there are alternative grounds for filing charges seeking a suspension in excess of three (3) days, removal, or discharge." *Id.*; *see also* Pls.' Surresp. Br. Ex. A, at 12 (stating that the issue presented before Arbitrator Roumell was "whether the Waukegan Police Department had just cause to terminate the employment" of Mr. Keating "for his alleged misconduct" and, if not, "what is the appropriate remedy?").

The last section of the notice was titled, "Waukegan Police Department Administrative Proceeding Rights." Compl. Ex. D, at 2. This section provided nine advisements:

1. Any admission made in the course of this hearing, interrogation or examination may be used as the basis for charges seeking your removal, discharge or suspension.
2. You have the right to counsel of your choosing to be present with you to advise you at this hearing, interrogation or examination and you may consult with him/her as you desire.
3. You have the right to be given reasonable time to obtain counsel of your choosing.
4. You have no right to remain silent. You have an obligation to truthfully answer questions put to you and are advised that your statements or responses constitute an official police report.
5. If you refuse to answer questions put to you, you will be advised by a superior officer that your statements or responses constitute an official police report.
6. If you persist in your refusal after the order has been given to you, you are advised that such refusal constitutes a violation of the rules and regulations of the Waukegan Police Department and will serve as a basis for which your discharge will be sought.
7. You are further advised that by law, any admission made by you during the course of this hearing, interrogation or examination cannot be used against you in a subsequent criminal proceeding.
8. The interrogation shall be of reasonable duration and shall permit you reasonable periods for rest and personal necessities. You shall not be subjected to professional or personal abuse, including offensive language.
9. A complete record of the interrogation shall be made, and a complete transcript or copy shall be made available to you without charge and without undue delay.

*Id*. at 2-3. The seventh advisement describes *Garrity* protection, a doctrine eponymously named for the plaintiff in *Garrity v. New Jersey*, 385 U.S. 493 (1967). The Court will explain the import of *Garrity* and its progeny for this action in the discussion section below.

Mr. Keating did not attend the June 2, 2022, investigatory hearing. On May 24, 2022, in response to the City's notice of formal investigation, Mr. Keating's counsel (the same Labor Committee attorney representing Mr. Keating in this case) served a letter upon Commander Mandro informing him that Mr. Keating "is neither required to participate nor will he be participating in the City's unilaterally scheduled statement." Compl. Ex. E, at 1. The letter asserted that "James Keating is currently not an employee of the Waukegan Police Department or the City of Waukegan," so "[t]he City of Waukegan and the Waukegan Police Department cannot compel the statement of James Keating" and have "no authority over James Keating." *Id*. (emphasis omitted). In addition, the letter demanded that the Waukegan Police Department cease and desist from contacting Mr. Keating absent lawful purposes. *Id*.; Compl. ¶ 20.

Around June 16, 2022, Mr. Keating's counsel was served a predisciplinary hearing notification for Mr. Keating, which stated that a hearing would be held on June 29, 2022, to determine whether the information gathered in Internal Investigation #14 justified administering discipline against him. Compl. ¶ 21-2; Compl. Ex. F, at 1. The notification explained that "[t]he purpose of this hearing is to provide you with an opportunity to be heard." Compl. Ex. F, at 1. In the motion to dismiss briefing, the City calls the notification a "*Loudermill*" notification, after *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). *See* Def.'s Mem. Supp. Mot. Dismiss 4, ECF No. 11. *Loudermill* held that "an employee who has a constitutionally protected property interest in his employment" is entitled to a pretermination hearing. *Id*. at 542.

Again, Mr. Keating did not attend the hearing. On June 28, 2022, in response to the predisciplinary hearing notification, his counsel served a letter upon Commander Mandro explaining that Mr. Keating would not be appearing for the following reasons:

> Because Mr. Keating is not currently an employee [of the Waukegan Police Department or the City of Waukegan], his appearance cannot be compelled at the *Loudermill* hearing and any statement elicited would not be *Garrity* protected. Proceeding with the *Loudermill* hearing without providing Mr. Keating the opportunity to defend himself from these wrongly lodged allegations is a violation of his Due Process Rights afforded to him under the Illinois Constitution and the United States Constitution.

Compl. Ex. G, at 1. The complaint alleges "[u]pon information and belief" that the predisciplinary hearing did not take place on June 29, 2022. Compl. ¶ 25.

The City's next communication with Mr. Keating was to inform him of the second termination. On July 19, 2022, Chief Zupec served upon Mr. Keating's counsel a letter with the subject, "Completion of Internal Investigation (22INT-014) and Termination of Employment." Compl. ¶ 27. In the letter, Chief Zupec noted that Mr. Keating had refused to participate in the internal investigation or appear at the predisciplinary hearing and stated that "[b]ecause of your silence, I deem the factual statements in the proposed letter of termination to be true and undisputed." Compl. Ex. H, at 1. Then, he informed Mr. Keating that "[w]ith the information provided to me, I find there to be a separate and independent basis for terminating your employment for . . . the following misconduct": (1) "you attempted to effectuate an unlawful arrest when you ordered a subject out of the car for a non-extraditable warrant"; (2) "you behaved in a manner unbecoming an officer"; (3) "you communicated false and/or misleading information over dispatch about being hit by a car, which clearly influenced . . . other officers"; (4) "you violated the pursuit policy"; and (5) "you communicated false, misleading, and/or incomplete information in your supplemental report." *Id*. at 2-6.

On July 25, 2022, the Labor Committee responded by filing a grievance challenging the second termination based on lack of "jurisdiction/standing to investigate" and lack of just cause. Compl. ¶ 30; Compl. Ex. I, at 1. This grievance is still pending. Arbitrator Roumell's April 2023 opinion and awards pertained only to the first termination. As such, despite Arbitrator Roumell's reduction of the first termination to a ten-month suspension that has expired, Mr. Keating has not been reinstated. In response to a motion by the Labor Committee to clarify the April 2023 award, Arbitrator Roumell stated that Mr. Keating "cannot be reinstated to his employment with the Waukegan Police Department because by July 19, 2022, he had been terminated for reasons other than those before this Arbitrator." Pls.' Surresp. Br. 1. A separate arbitration hearing regarding the second termination is scheduled for June 17, 2024. Pls.' Mot. Request Ruling Def.'s Mot. Dismiss & Apprise Court Updates Regarding Arbs. ¶ 17, ECF No. 31.

Mr. Keating and the Labor Committee initiated this action on September 8, 2022, by filing a complaint against the City of Waukegan in the Circuit Court of Cook County, Chancery Division, Case No. 19 CH 15415. The complaint alleges claims based on Internal Investigation #14 and the second termination. It includes three counts: (1) "Investigation — Due Process"; (2) "Investigation — Agency"; and (3) "Discipline — Agency." As relief, the plaintiffs request that the Court issue "an order declaring that" any discipline against Mr. Keating resulting from Internal Investigation #14 "be declared void *ab initio* and expunged." *Id*. at 7-8, 10. The plaintiffs also request a judgment that restates the premises for their requested relief as outlined in the complaint; the Court does not list those premises here as it will address the parties' legal arguments in the discussion section. In subsequent briefing, the plaintiffs updated their request for relief as follows: "[n]ow that Arbitrator Roumell has rescinded the first termination, the right of relief would be the reinstatement of Keating, either through this Court ordering Keating's reinstatement or a declaration that the City

could not fire Keating a second time . . ., thereafter resulting in Arbitrator Roumell's basis for not reinstating Keating becoming a nullity." Pls.' Surresp. Br. 7.

On October 6, 2022, the City filed a notice of removal to this Court on federal question grounds, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. Then, on November 14, 2022, the City filed the pending motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); ECF No. 10. In its Rule 12(b)(6) motion, the City also argues that the plaintiffs' claim should be dismissed because it properly belongs in arbitration rather than in this Court. Mot. Dismiss ¶ 7. The City, however, has not moved for the Court to stay the action pending arbitration or to compel arbitration.

## DISCUSSION

The City's motion to dismiss raises two issues: first, whether the plaintiffs' claim is subject to arbitration and, second, whether the complaint states a claim upon which relief can be granted. These issues are distinct, and the Court considers them in turn.

## I. Arbitrability

The Court starts with—and quickly disposes of—the arbitration issue. The City asserts that "the complaint should [ ] be dismissed because the [plaintiffs'] claims are all subject to a pending arbitration proceeding, in which the [plaintiffs] will have [the] opportunity to present any and all defenses to [Mr. Keating's] termination." Mot. Dismiss ¶ 7; *see also* Def.'s Mem. Supp. Mot. Dismiss 14. This argument fails for several reasons. As a threshold matter, the City's Rule 12(b)(6) motion to dismiss is not a motion to compel arbitration; it does not seek to enforce an arbitration provision. The appropriate way to enforce an arbitration agreement in federal court is through one of three motions: (1) a motion to stay the action pending arbitration under FAA § 3; (2) a motion to compel arbitration in the court's district under FAA § 4; or if the arbitration agreement contains

a forum selection clause pointing to a forum outside the court's district, (3) a motion to dismiss on *forum non conveniens* grounds. *See Berkshire Investments*, *LLC, v. S-Pro, LLC*, No. 22 CV 5407, 2023 WL 5165663, at *2 & n.1 (N.D. Ill. Apr. 13, 2023).

More fundamentally, the City has not identified an arbitration agreement that subjects the plaintiffs' claim to arbitration. Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, "reflects . . . the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). As such, a claim is subject to arbitration "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). The City might have argued that the CBA contains an arbitration agreement and that the issues raised in this action fall within the scope of that agreement, but it did not.

The City's failure to identify an agreement to arbitrate the plaintiffs' claim likely reflects an acknowledgment that the arbitration provisions of the CBA do not appear to include an agreement to arbitrate the issues raised by the plaintiffs in this case. Section 7.5(8) of the CBA states that, should the Labor Committee refer a grievance to arbitration, "[t]he arbitrator shall consider and decide only the question of fact as to whether there has been a violation, misinterpretation, or misapplication of the specific provisions of [the CBA]." In the action before this Court, the plaintiffs do not allege that the City violated any specific provisions of the CBA. The Labor Committee has referred its grievance challenging the second termination to arbitration, and presumably the Labor Committee will bring arguments that the City violated the CBA in that forum, as distinct from the arguments the plaintiffs make here. Therefore, even if the City had filed

11

an appropriate arbitration motion, the Court would deny it. With the arbitration issue excised, the Court proceeds to consider the City's Rule 12(b)(6) motion as such.

## II.  Rule 12(b)(6)

For a complaint to survive a Rule 12(b)(6) motion, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To meet the plausibility standard, a complaint "need not identify a legal theory, and specifying an incorrect theory is not fatal"; the standard requires only factual sufficiency. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). "However, when presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995), *as amended* (Apr. 7, 1995). That is, the plaintiff must present a legal argument that links the factual allegations in the complaint to a source of relief. "The federal courts will not invent legal arguments for litigants." *Id*.

The complaint alleges that the City terminated Mr. Keating for misconduct, then initiated Internal Investigation #14 and, based on information gathered in that investigation, terminated him a second time. These allegations comprise one claim.[2] *See Florek v. Vill. of Mundelein, Ill.*, 649

---

[2] A question may be raised as to whether the Labor Committee has standing to bring this claim. However, this standing issue does not affect the Court's subject-matter jurisdiction over the claim because the complaint's allegations establish Mr. Keating's standing to sue for declaratory or injunctive relief: Mr. Keating was terminated by the City for misconduct (injury), he challenges the internal investigation into his conduct and subsequent termination (causation), and a declaration that the termination was invalid or an injunction requiring his reinstatement would redress his injury (redressability). Therefore, the Court sets aside the issue of whether the Labor Committee has standing (and uses the plural term "plaintiffs" throughout this opinion).

F.3d 594, 599 (7th Cir. 2011) (defining a claim as "the aggregate of operative facts which give rise to a right enforceable in the courts"). In their briefs opposing the City's motion to dismiss, the plaintiffs offer three purported legal bases to support their claim: First, the City deprived Mr. Keating of *Garrity* protection and due process by waiting until after the first termination to initiate Internal Investigation #14, instead of investigating him while he was an "active" employee. Second, the City did not have authority to investigate Mr. Keating's conduct or to discipline him after the first termination (this argument corresponds to the two "agency" counts in the complaint, Counts II-III). And third, even if the City had such authority, it was precluded from terminating Mr. Keating a second time by the doctrines of unclean hands or laches.

The City argues that the factual allegations in the complaint do not plausibly give rise to a right to relief. With respect to the plaintiffs' first argument opposing dismissal, the City attacks the sufficiency of the factual allegations in the complaint, arguing that the factual allegations do not plausibly suggest that Mr. Keating suffered a deprivation of any constitutional rights. With respect to the plaintiffs' second and third arguments, the City attacks the legal bases (or lack thereof) offered by the plaintiffs. The City argues that the plaintiffs' "agency" arguments have no sound legal basis and that the doctrines of unclean hands and laches are equitable affirmative defenses, so these doctrines cannot be used offensively to support a claim.

As follows, the Court evaluates the legal bases offered by the plaintiffs to support their claim. For each, the Court determines whether the purported legal basis is valid and, if so, whether the plaintiffs' argument links the factual allegations in the complaint to a plausible source of relief. So long as one legal basis plausibly supports the plaintiffs' claim, the complaint meets federal pleading standards; otherwise, it should be dismissed.

A.    *Garrity* **and Due Process**

The plaintiffs argue that the "City violated the *Garrity* Rights and Due Process Rights of Keating." Pls.' Resp. Br. 9. Section 1983 creates a cause of action against state actors for conduct committed under color of state law that deprives a person of a right "secured by the Constitution and laws." 42 U.S.C. § 1983. The Court assumes that the plaintiffs intend to invoke § 1983, although they do not cite this provision or any other right of action. To state a claim under § 1983, a plaintiff must identify a predicate violation of a federal right. And "a defendant must have been 'personally responsible' for the deprivation of the right at the root of a § 1983 claim for that claim to succeed." *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 869 (7th Cir. 2011). A city may be held liable for conduct committed pursuant to a government policy or custom. *See Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978). For purposes of this motion, the Court focuses on whether the plaintiffs have identified a predicate violation of a federal right and whether the factual allegations in the complaint plausibly suggest that Mr. Keating suffered a deprivation of that right (the City does not contest its responsibility for the conduct at issue).

The Court starts with an overview of the applicable legal doctrines. In *Garrity*, the Supreme Court held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." 385 U.S. at 500. The protection against coerced statements, or the privilege against compelled self-incrimination, comes from the Fifth Amendment, which provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment privilege applies to state actors through the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1; in *Brown v. State of Mississippi*, 297 U.S. 278 (1936), the Supreme Court held that the use of confessions obtained by coercion "as the

14

basis for conviction and sentence" constitutes a "denial of due process." *Id*. at 286. Thus, when a State obtains incriminating testimony under threat of "potent sanctions," including job loss, "that testimony is obtained in violation of the Fifth Amendment and cannot be used against the declarant in a subsequent criminal prosecution." *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

Similarly, "a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Id*. In companion cases decided the year after *Garrity*, the Supreme Court held that a public employee may not be discharged for invoking or refusing to waive his Fifth Amendment privilege. *Gardner v. Broderick*, 392 U.S. 273 (1968); *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation of City of New York*, 392 U.S. 280 (1968). "At the same time, the [Supreme] Court provided for effectuation of the important public interest in securing from public employees an accounting of their public trust," *Cunningham*, 431 U.S. at 806, by distinguishing circumstances where an employee "ha[s] refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself" (even if a waiver would be ineffective). *Gardner*, 392 U.S. at 278. In these circumstances, because of his immunity, his silence is not an exercise of his Fifth Amendment privilege against self-incrimination, so "the privilege against self-incrimination would not [be] a bar to his dismissal." *Id*.

Therefore, consistent with *Garrity* and its progeny, a State "has every right to investigate allegations of misconduct, including criminal misconduct by its employees." *Atwell v. Lisle Park Dist.*, 286 F.3d 987, 990 (7th Cir. 2002). In the context of an investigation into allegations against an employee, "the state has a choice between either demanding an accounting from him on job-related matters," with threat of discharge or another coercive penalty, "in which case it cannot use

the statements in a criminal prosecution, or prosecuting him, in which case it cannot demand an accounting." *D'Acquisto v. Washington*, 640 F. Supp. 594, 622 (N.D. Ill. 1986). If the State demands an accounting, the State can discharge the employee for refusing to answer relevant questions related to his official duties so long as, in the Seventh Circuit, the State first warns him of his *Garrity* protection. *Atwell*, 286 F.3d at 990.[3] The State cannot, however, discharge an employee for refusing to answer questions on Fifth Amendment grounds outside of an accounting, in circumstances where his testimony might be used against him in a criminal proceeding. *See Confederation of Police v. Conlisk*, 489 F.2d 891, 895-95 (7th Cir. 1973); *see also Baxter v. Palmigiano*, 425 U.S. 308, 316-20 (1976) (distinguishing an adverse inference).

If an employee subject to investigation has a protectible property interest in his job, another doctrine also applies. Under *Loudermill*, "once an employee has established the existence of a property interest, the employee ordinarily has the right to notice and a reasonable opportunity to respond [to the charges against him] prior to termination." *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 628 (7th Cir. 1995) (citing *Loudermill*, 470 U.S. at 542). The source of this right is the Due Process Clause of the Fourteenth Amendment, which provides that no person shall be "deprived of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. A public employee who can only be terminated "for cause" has a property interest in his job. *Loudermill*, 470 U.S. at 538-39. Where post-termination remedies are adequate,

---

[3] In *Atwell,* the Seventh Circuit noted that no other circuit had adopted a rule that requires *Garrity* warnings and that "[o]utside the criminal context, government is not required to advise the persons with whom it deals, including its employees, of their legal options." *Id*. The Seventh Circuit explained its rule as "an anti-mousetrapping rule." *Id*. *Garrity* warnings remain a required element of due process in this Circuit. *See, e.g., Homoky v. Ogden*, 816 F.3d 448, 454 (7th Cir. 2016) ("The practice is unconstitutional when the police department fails to tell the officer that it will not use the information in a subsequent criminal prosecution").

such an employee has a due process right to "oral or written notice of the charges against him, an explanation of the employer's evidence, and [a meaningful] opportunity to present his side of the story" prior to termination. *Id.* at 546; *see Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Therefore, before the State can discharge a tenured employee based on his refusal to answer questions in an accounting, his statements during investigatory proceedings, or other evidence of misconduct, the State must offer the employee a meaningful pretermination hearing.

Here, after the first termination, while the Labor Committee's grievance challenging the first termination was pending, the City of Waukegan initiated an internal investigation into allegations of misconduct by Mr. Keating in connection with an officer-involved shooting. The City scheduled an investigatory hearing, in which Mr. Keating declined to participate. Through his counsel, he explained that he "is neither required to participate nor will he be participating in the City's unilaterally scheduled [hearing]." Compl. Ex. E, at 1. The City later scheduled a predisciplinary hearing "to provide [him] with an opportunity to be heard." Compl. Ex. F, at 1. Again, Mr. Keating skipped the hearing, explaining through his counsel that "[b]ecause [he] is not currently an employee, his appearance cannot be compelled at the *Loudermill* hearing and any statement elicited would not be *Garrity* protected." Compl. Ex. G, at 1. Chief Zupec then informed Mr. Keating that "[b]ecause of your silence, I deem the factual statements in the proposed letter of termination to be true and undisputed," and, based on these facts, "I find there to be a separate and independent basis for terminating your employment." Compl. Ex. H, at 1-2. As a result, Mr. Keating lost potential reinstatement to his position should the Labor Committee prevail on its first grievance. Indeed, Arbitrator Roumell reduced the first termination to a ten-month suspension in April 2023, but Mr. Keating has not been reinstated because "by July 19, 2022, he had been terminated for reasons other than those before [Arbitrator Roumell]." Pls.' Surresp. Br. 1.

17

According to the plaintiffs, the City deprived Mr. Keating of "an opportunity to present his side of the story without the fear of criminal prosecution" by terminating him before launching Internal Investigation #14. Pls.' Resp. Br. 9. In the notice of formal investigation, the City advised Mr. Keating that it would seek to obtain his story under threat of discharge in the investigatory hearing: "[i]f you refuse to answer questions put to you [during the hearing], you will be advised by a superior officer to answer the question," and "[i]f you persist in your refusal after the order has been given to you, you are advised that such refusal constitutes a violation of the rules and regulations of the Waukegan Police Department and will serve as the basis for which your discharge will be sought." Compl. Ex. D, at 2. A threat of discharge ordinarily constitutes coercion under the *Garrity* line of cases. Based on the ordinary case, and reflecting the Supreme Court's holding in *Garrity*, the notice included an advisement that "by law, any admission made by you during the course of this hearing . . . cannot be used against you in a subsequent criminal proceeding." *Id*. The complication here is that the City had already terminated Mr. Keating, so he faced loss of potential reinstatement, not job loss. Pre-investigative termination, the plaintiffs argue, nullified the coercive element of the threat of job loss and therefore rendered any statements he made in the hearing admissible against him in a criminal prosecution. Based on this premise, the plaintiffs argue that the City deprived Mr. Keating of *Garrity* protection.

Building on their *Garrity* argument, the plaintiffs argue that the City failed to provide Mr. Keating with of a meaningful opportunity to be heard as required by due process. They argue that he retained a property interest in his employment after the first termination, explaining that "[s]hould the arbitrator in the first arbitration reinstate [him], his property interest would be in maintaining his employment with the City." Pls.' Resp. Br. 8. The City terminated Mr. Keating based on Internal Investigation #14 while the Labor Committee's first grievance was pending.

Accordingly, the plaintiffs argue that Mr. Keating was entitled to a meaningful opportunity to be heard prior to the second termination. The plaintiffs acknowledge that the City provided Mr. Keating with an opportunity to be heard (the predisciplinary hearing), but they argue that this opportunity was not meaningful because fear of self-incrimination forced him to remain silent. They attribute Mr. Keating's fear of self-incrimination at the predisciplinary hearing to his status as a former employee, with its purported effect on his right to *Garrity* protection, and they contend that to provide Mr. Keating with due process, the City should therefore have "[kept] him an active employee during the investigation of the officer involved shooting." *Id*. at 9.[4]

But there is no overarching constitutional right "to present [one's] side of the story without the fear of criminal prosecution." *Id*. The plaintiffs' premise that the City schemed to deny Mr. Keating *Garrity* protection by terminating him before launching the #14 investigation and thereby ***eliminating*** the coercion required to trigger his right to *Garrity* protection literally turns the *Garrity* doctrine inside out. The Fifth Amendment secures a right to silence, not a right to speak.

_____

[4] Based on the logical leaps in their argument, the plaintiffs apparently assume that (1) Mr. Keating would have been entitled to *Garrity* protection for his statements at the predisciplinary hearing if only he were an "active" employee; and (2) to effectuate Mr. Keating's purported right to tell his side of the story without fear of self-incrimination at the predisciplinary hearing, the City was required to trigger his right to *Garrity* protection. Both assumptions are flawed. First, *Garrity* protection is triggered by the threat of a coercive penalty for refusing to make a statement. The plaintiffs, however, do not allege that the City threatened Mr. Keating with discharge for refusing to tell his side of the story at the predisciplinary hearing (as distinct from threatening him with discharge for refusing to answer questions at the investigatory hearing). Second, to the extent that an employee's right to an opportunity to be heard includes a right to immunity from criminal prosecution based on his responses to the charges against him, that means that the Due Process Clause itself prohibits the use of those statements in a criminal prosecution. *Cf. Conlisk*, 489 F.2d at 895 n.4. (explaining that by providing *Garrity* warnings, the State "is not 'granting' immunity from prosecution; it is merely advising the [witness] of the constitutional limitations on any criminal prosecution should they answer"). That is, no affirmative grant of immunity by the State is necessary, whether directly or through *Garrity* by keeping Mr. Keating an "active" employee, as the plaintiffs propose. The Court raises these issues in a footnote so as not to distract from the more important flaws in the plaintiffs' argument, which the Court addresses next.

The *Garrity* line of cases imposes two constraints on the State if an employee's story might be used against him in a criminal prosecution: the State cannot (1) obtain his story under threat of discharge or (2) discharge him solely for refusing to tell his story.[5] In the context of an investigation into allegations of misconduct by an employee, Fifth Amendment law permits the State to demand an accounting from him on job-related matters, in which case the State cannot use his statements against him in a criminal prosecution, but the State is not required to demand an accounting. If the employee refuses to respond to the charges against him during investigatory proceedings, rather than demand a statement on pain of discharge, the State can pursue its investigation via other means. If the State obtains evidence of misconduct through these means, it can discharge him based on that evidence without offending the Fifth Amendment, though the employee never received *Garrity* protection during the investigation.

Due process adds a right to speak if the employee is tenured: prior to discharge, the State must provide him a meaningful opportunity to respond to the evidence against him. But an employee who declines to tell his story at a pretermination hearing to avoid self-incrimination, without some other problem, has received sufficient process. In cases involving such employees, the Sixth and Third Circuits have held that the employees received a meaningful opportunity to respond. *See Buckner v. City of Highland Park*, 901 F.2d 491, 496 (6th Cir. 1990); *Gniotek v. City of Philadelphia*, 808 F.2d 241, 245 (3d Cir. 1986). The Seventh Circuit has approved these holdings, albeit in dicta. In *Carmody v. Board of Trustees of University of Illinois*, 747 F.3d 470 (7th Cir. 2014), the Seventh Circuit explained that "employees who decline to respond to an

---

[5] Here, the plaintiffs do not argue that the City terminated Mr. Keating solely for his silence, so the second constraint is not at issue. Both constraints are still important for understanding how an employee could constitutionally be discharged without having received *Garrity* protection.

employer's charges because their responses could be incriminating . . . make a voluntary and self-interested choice to stay silent," which does not raise Fourteenth Amendment problems. *Id*. at 476 n.1. This Court agrees. Accordingly, the deprivation complained of by the plaintiffs is not a deprivation of a Fifth or Fourteenth Amendment right.

None of this is to say, however, that the City did not attempt to coerce Mr. Keating to respond to questions pertinent to its investigation. The plaintiffs' *Garrity* argument rests on the premise that unlike job loss, loss of potential reinstatement does not constitute coercion within the meaning of the Fifth Amendment. The Court disagrees. While *Garrity* was concerned with the penalty of job loss, "the touchstone of the Fifth Amendment is compulsion, and [job loss is] not the only penalt[y] capable of forcing the self-incrimination which the Amendment forbids." *Cunningham*, 431 U.S. at 806. Loss of "potential economic benefits realistically likely of attainment" may also constitute coercion. *Id*. at 807. In *Cunningham*, the Supreme Court explained that "[p]rudent persons weigh heavily such legally unenforceable prospects in making decisions; to that extent, removal of those prospects constitutes economic coercion." *Id*.; *See, e.g., Lefkowitz v. Turley,* 414 U.S. 70, 82-84 (1973) (finding that disqualification from eligibility for future government contracts imposed an unconstitutional penalty on Fifth Amendment silence). Under the circumstances of this case, the Court fails to see a material difference between the threat of job loss that Mr. Keating might have faced absent the first termination, and a threat of loss of potential reinstatement to his position with the Waukegan Police Department. Both penalties constitute coercion within the meaning of the Fifth Amendment.

Therefore, the plaintiffs' argument fails for another reason: Mr. Keating's status as a former versus "active" employee is immaterial for purposes of applying the *Garrity* line of cases. Had he attended the investigatory hearing, and had he answered the City's questions under threat of

discharge, or more precisely, threat of loss of potential reinstatement, the government could not have used those answers against him in a subsequent criminal prosecution. Accordingly, by terminating Mr. Keating before launching Internal Investigation #14, the City did not deprive Mr. Keating of an opportunity to present his side of the story without fear of self-incrimination.

In sum, the factual allegations in the complaint do not plausibly suggest that the City violated *Garrity* or Mr. Keating's right to an opportunity to be heard.[6] The plaintiffs argue that the City deprived Mr. Keating of an opportunity to tell his side of the story without fear of self-incrimination by terminating him before launching Internal Investigation #14, but (1) such a deprivation does not state a violation of the Fifth or Fourteenth Amendments and (2) the factual allegations in the complaint do not plausibly suggest that the first termination caused such a deprivation. Accordingly, the complaint does not state a plausible § 1983 claim.

### B.     "Agency" Counts

The plaintiffs also argue that the City did not have authority to investigate Mr. Keating's conduct or to discipline him after the first termination. With respect to the City's investigatory authority, the plaintiffs assert that "because the [employer-employee] relationship ceased on March 17, 2022, the City was precluded [after that date] from investigating alleged misconduct" by Mr. Keating that "occurred when there was an active an [employer-employee] relationship." Pls.' Resp. Br. 9. Likewise, with respect to the City's disciplinary authority, the plaintiffs assert that "the City was precluded . . . [from] imposing discipline upon Keating after the [employer-employee] relationship ceased to exist, especially should Keating be reinstated by the arbitrator

---

[6] The Court need not and does not reach the issue of whether Mr. Keating had a property interest in his employment after the first termination, while the Labor Committee's first grievance was pending, entitling him to notice and an opportunity to be heard prior to the second termination.

regarding the first termination." *Id*. The plaintiffs do not explain what law "preclude[s]" an employer from investigating or disciplining a former employee. In their surresponse brief, the plaintiffs cite case law regarding the test for whether an employer-employee relationship exists. Pls.' Surresp. Br. 5-6. This case law does not address the key issue: even if the employer-employee relationship between the City and Mr. Keating ceased on March 17, 2022, what law gives rise to a claim for relief against the City for investigating and identifying additional bases confirming that termination was appropriate even after March 17, 2022?

The doctrine of after-acquired evidence in employment cases provides a helpful analog. Where, in the course of litigation over an unlawful discharge, an employer obtains evidence that permits the employer to terminate the employee on lawful grounds, the employee's entitlement to backpay ends as soon as the employer obtains such evidence because "the causal relation between the [employer's] unlawful conduct and the employee's termination is severed." *Hartman Bros. Heating & Air Conditioning v. N.L.R.B.*, 280 F.3d 1110, 1115 (7th Cir. 2002). Here, while the Labor Committee's grievance challenging Mr. Keating's first termination was pending, the City obtained evidence that, it contends, provides a separate and independent basis for terminating Mr. Keating's employment. Whether the City's evidence provides just cause to terminate Mr. Keating is not before this Court. The question here is whether, based on the information the City gathered in Internal Investigation #14, the City may argue in the upcoming arbitration proceeding that it should not have to reinstate Mr. Keating. The plaintiffs have not offered any legal basis that would prevent the City from presenting this argument. Therefore, the plaintiffs have failed to offer a basis in agency law to support their claim.

### C.    Equitable Doctrines

Finally, and in the alternative ("[a]ssuming arguendo that the City of Waukegan had the authority to fire Keating a second time, while being a non-employee"), the plaintiffs argue that "the City of Waukegan should be precluded from terminating Keating a second time under either the doctrine of unclean hands or the equitable doctrine of laches." Pls.' Surresp. Br. 3. But as the City correctly observes, the doctrines of unclean hands and laches are equitable affirmative defenses; they do not give rise to a cause of action for affirmative relief. The doctrine of unclean hands "reduce[s] to the principle that a court will not entertain a claim or defense that would create a greater legal wrong than vindicating the claim or defense would avert." *Schlueter v. Latek*, 683 F.3d 350, 355-56 (7th Cir. 2012). The doctrine of laches is an equitable rule of limitations that rests on the "maxim that one who seeks the help of a court of equity must not sleep on his rights." *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 939 (7th Cir. 1984) (Posner, J., concurring). In this case, the plaintiffs, not the City, are seeking equitable relief, so neither the doctrine of unclean hands nor the doctrine of laches appropriately apply.

*        *        *

The complaint does not state a plausible claim to relief because the factual allegations do not plausibly substantiate a § 1983 theory, and the plaintiffs have failed to identify any other valid legal basis to support their claim. Accordingly, the Court grants the City's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The dismissal is without prejudice; leave to amend is granted if the plaintiffs believe that they can cure the deficiencies in the complaint.

Date: June 7, 2024

John J. Tharp, Jr.
United States District Judge

24